Turney, J.,
delivered the opinion of the Court.
*147 The Chancellor’s decree declaring void the power of attorney of Rachel Duncan to Josiah Conley, of November, 1860, and the power of attorney of John B. Duncan to Josiah Conley, of November 7. 1860, and the deed of said Conley, as attorney in fact for the two above named parties, to Z. L. Burson, made June 20, 1863, is correct. The facts necessary to be noticed are: Richard and John B. Duncan were the children of Joseph and Molly Duncan, who, after making a joint will, appointing defendant, James "VJ. Duncan, executor, died. By the will, certain lands were devised to their children, including Richard and John B., who lived in Iowa. At the times mentioned above, the powers of attorney were executed. Assuming to act under these powers, Josiah Conley, as attorney in fact, representing Rachel and John B., joined others in the deed of 20th of June, 1863, to Burson, conveying their interests in a tract of land of about 530|- acres: After this, Rachel died, leaving her husband and the heirs at law mentioned in the bill, who joined in this suit, asking to have the deed, as to the two interests, declared void, and the cloud removed from the title. Josiah Conley resided in Tennessee, and is dead. The tract of land is in Washington County, Tennessee. Rachel lived in Iowa. to the time of her death. John B. still lives there.
Without expressing an opinion as to the validity or invalidity of the powers of attorney, or of the deed as to the two interests of John B. and Rachel, as appearing upon their faces or from their execution, but treating them as regular in these respects, we hold the *148 deed void, for tire reason that war existed at the time of the making of the deed, in which the two States of which the makers of the power of attorney and the attorney in fact, were respectively residents and citizens, were antagonistic. By the general law, a state of war puts an end to all executory contracts between the citizens of the different countries. Whatever contract remains then in fieri, is either suspended or dissolved, flagrante bello. 19 Johns, 138. The Avar between the States revoked the poAvers of attorney from John B. and Rachel Duncan to Conley; therefore, the deed was without authority.
Defendant Burson, in his answer, asks that it be filed as a cross bill; and if his title under the deed is not good as to the interests of John B. and Rachel, he asks that the administrator of Josiah Conley account for the money paid to him on the purchase of the two interests. Without deciding whether he is properly in eourt by his cross bill, we are of opinion the relief asked can not be granted.
The pleadings and proof satisfy us that the payment was in Confederate money. Under the rule, as declared by the Supreme Court of the United States, and by this Court during the present term, the defendant is not entitled to an account for the money paid by him. The fact that the Confederate States was a government de facto, or a government of paramount force, can not affect the rights of a citizen of a State at all times acknowledging the Government of the United States, and at no time interrupted in that acknowledgment by the Confederate Government or it *149 armies; and while, as between citizens of States in secession, Confederate money did have a value, this was not so as between citizens of what were called the loyal States, nor as between citizens, on the one side, of the seceding States, and on the other of the loyal States not acting in sympathy with the cause of the South, and not trading upon terms of equality. During the civil war, all commercial intercourse with the enemy was prohibited by the Act of Congress of 1861. Revenue Cases, 66; Prize Cases, 291. In a State of war, the nations who are engaged in it, and all their citizens and subjects, are enemies to each other; hence, all intercourse and communication between them is unlawful. 18 How., 110. The tenor and meaning of the decisions of this Court, since its reorganization, are, that the States of the Union at war with each other were, in that war, as separate and distinct nations, and the citizens of each’ enemies of the other. It therefore follows, that their intercourse and communication was unlawful; and if citizens of Iowa were forbidden by the laws of war, or by the statutes of the General Government, of which they were citizens, to trade with a citizen of Tennessee, for the same reason they could not so trade through an agent or attorney in fact. And if, before the war, they constituted an attorney, and by the war the appointment was revoked, the action of the attorney in fact was a nullity, and communicated no title to the vendee. At the time of the conveyance, Conley, the attorney, and Burson, the purchaser from him, were bound to take notice of the existence of the war, and the political relations of themselves and John *150 B. and Rachel Duncan thereto/ and its legal effect. Burson had actual notice of the character in which Conley assumed to act; no fact was concealed from him. It results, therefore, that the payment of the purchase money by him to Conley was not for the benefit of John B. and Rachel, but was, in legal contemplation, no more than a deposit for his own use; he might have withdrawn it at any time; and if, when demanded, Conley had refused to return it, he could have made him liable for it or its value. Failing to do this, and the currency becoming valueless in the hands of Conley, without appropriation by him to his use, the loss falls upon Burson.
Affirm the decree.